**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| JONATHON MYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-2041 (ABJ) |
| ) | |
| ALUTIIQ INTERNATIONAL ) | |
| SOLUTIONS, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathon Myers brings this action against Alutiiq International Solutions, LLC ("Alutiiq"), a contractor with the U.S. Department of State, and two of its employees, Gregory Dodge and Eric Boyle, for wrongful termination, breach of implied contract, and promissory estoppel. He alleges that he was fired for engaging in whistleblowing activities. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court will grant defendants' motion in part and deny it in part.

**I.        Background**

Plaintiff alleges that he was hired in 2003 by George Bailey, the Contracting Officer's Representative ("COR") for the U.S. Department of State, under a government contract held by Anteon and General Dynamics. Compl. ¶ 14. In 2005, he was promoted to the position of on-site program manager for Anteon and General Dynamics at the Department of State, where he was responsible for managing all of the contract personnel who worked within his organization. *Id.* ¶ 17. That same year, Bailey directed plaintiff to hire an individual named Lori Strickland,

and plaintiff complied despite his concerns about her qualifications.  *Id.* ¶¶ 21–22.  Although Strickland was supposed to be under plaintiff's supervision, and plaintiff observed that she did little substantive work, Bailey objected when plaintiff attempted to critique or manage her performance.  *Id.* ¶ 22.

In March 2006, Bailey directed plaintiff to hire Strickland's daughter, Erika.  He told plaintiff that he was not interested in any other candidates for the position even though the standard practice was to interview several qualified applicants.  *Id.* ¶ 23.  The next year, Bailey also directed plaintiff to hire one of the Stricklands' friends, and he again stated that he was not interested in any other candidates.  *Id.*  During that time, Bailey also recommended another friend of the Stricklands to fill yet another position.  *Id.*

In early 2007, defendant Alutiiq won a contract with the Department of State and effectively took over the role previously performed by Anteon and General Dynamics.  *Id.* ¶¶ 18, 24.  Alutiiq retained all the employees in the contracts office, including plaintiff and his supervisors, defendants Dodge and Boyle.  *Id.* ¶¶ 10–11, 18.  Plaintiff alleges that when he began working for Alutiiq, "he received and reviewed an Employee Handbook and Code of Ethics and Business Conduct."  *Id.* ¶ 19.  He also asserts that Dodge "instructed" him at that time about Alutiiq's progressive discipline policy, which plaintiff was required to employ with his subordinates.  *Id.* ¶ 19.

Plaintiff states that he began hearing complaints from other Alutiiq employees about Lori Strickland's close personal relationship with Bailey.  *Id.* ¶ 24.  In April 2007, plaintiff counseled Strickland to refrain from involvement in a social relationship with Bailey to avoid violating government contracting regulations.  *Id.* ¶ 25.  In response to plaintiff's admonition of Strickland, Bailey removed her from plaintiff's direct supervision and placed her under his sole

supervision, an action that plaintiff alleges was in violation of government contracting regulations. *Id.* ¶ 26. Plaintiff alleges that as a result of the close relationship, and at Bailey's insistence, Lori Strickland received several unmerited raises and promotions over plaintiff's objections. *Id.* ¶¶ 28. Plaintiff notes that Strickland's salary exceeded that of more qualified Alutiiq employees. *Id.*

Plaintiff repeatedly asked Dodge and Boyle to address the situation created by the inappropriate relationship between Bailey and Strickland. *Id.* ¶ 30. He asserts that they declined to do so because they did not want to anger Bailey and jeopardize Alutiiq's government contract. *Id.* ¶ 31. Not satisfied with their response, in September 2009, plaintiff reported his concerns to Bailey's supervisor, Martin Kraus. *Id.* ¶ 32.

After Kraus performed an informal investigation, he forwarded the information to the Department of State Office of Inspector General ("OIG"), which initiated a formal investigation in 2009. *Id.* ¶¶ 33–34. Plaintiff cooperated with the OIG investigation through multiple interviews and by providing e-mails to support his allegations. *Id.* ¶ 34. The OIG concluded that three out of four serious allegations against Bailey were well-founded and substantiated by evidence provided by plaintiff and by other evidence gathered during the investigation. *Id.* ¶ 35. Bailey was then removed as the COR on the contract at issue, and Lori Strickland was terminated – at OIG's direction – on May 14, 2010. *Id.*

After the OIG completed its investigation, but before Lori Strickland was terminated, plaintiff directed a new receptionist, Louise Jefferson, to limit the amount of time she spent socializing with Lori and Erika Strickland at her desk. *Id.* ¶ 36. He told her that the government was paying close attention to the level of professionalism in the office, but did not mention anyone's name or the OIG investigation. *Id.* Dodge then instructed plaintiff to "drop" the issue

with Jefferson.  *Id.* ¶ 37.  On May 12, 2012, Jefferson sent an e-mail to plaintiff, Dodge, Boyle,

and Bailey complaining about "office politics" and the "hostile work environment" created by

plaintiff's discussion with her about the socializing.  *Id.* ¶¶ 37–38.  According to plaintiff, "[h]is

experience as a Program Manager, coupled with the tone and content of Ms. Jefferson's e-mail,

gave [plaintiff] the impression that she had been instructed to send this e-mail and include key

terms such as 'hostile workplace,' a term which is often used as a precursor for administrative

action."  *Id.* ¶ 38.  Plaintiff responded to Jefferson's e-mail, which he found to be an inaccurate

characterization of the event, that afternoon.  *Id.* ¶ 39.  Dodge and Boyle then telephoned

plaintiff and instructed him not to send further e-mail correspondence about the matter.  *Id.*

Plaintiff alleges that he did not.  *Id.*

On May 17, 2012 – the next business day after Lori Strickland was terminated –

defendants Dodge and Boyle told plaintiff that he was being terminated from Alutiiq for

insubordination.  *Id.* ¶ 40.

On November 5, 2010, plaintiff filed his complaint in the Superior Court for the District

of Columbia against Alutiiq, Dodge, and Boyle.  Defendants removed the action to this Court on

November 29, 2010, and then moved to dismiss the complaint for failure to state a claim under

Fed. R. Civ. P. 12(b)(6).

In Count I, plaintiff alleges he was wrongfully terminated in retaliation for reporting

wrongdoing by Bailey and Lori Strickland.  Count II alleges a breach of an implied contract

arising out the progressive discipline policy, which plaintiff claims was breached when he was

summarily fired.  Count III alleges promissory estoppel.[1]  This claim is based on alleged

---

1       In response to defendants' motion, plaintiff withdrew his claim for breach of implied
contract (Count II) against the individual defendants, Dodge and Boyle, but maintains that cause
of action against Alutiiq.  Pl.'s Opp. at 13 n.2.

promises made by defendants that they would not retaliate against plaintiff for cooperating with the OIG investigation, and that a progressive discipline policy would be applied before any termination.  Plaintiff alleges that he relied on this promise and did not seek another job before participating in the OIG investigation.

Plaintiff seeks compensatory and punitive damages, including back pay and future pay; costs and expenses; and equitable relief, consisting of the re-characterization of his departure as "resignation" instead of "termination," and a favorable reference from Alutiiq.  Compl. at 16.

## II.    Standard of Review

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  129 S. Ct. at 1949.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*. at 1949, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).   Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss under Rule 12(b)(6), a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).[2]

## III.   Analysis

### A.  Count I: Wrongful Termination

#### i.  Plaintiff states a claim against Alutiiq for wrongful termination

Defendants argue that because plaintiff was an at-will employee, his cause of action for wrongful termination fails because he does not allege a sufficient public policy to sustain his claim.  The Court disagrees.

 "Under District of Columbia law, 'employment is presumed to be at will, unless the contract of employment expressly provides otherwise.'" *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1328 n.3 (D.C. Cir. 1999), quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 162 (D.C. 1997).  "An employee who serves at the will of his or her employer may be discharged 'at any time and for any reason, or for no reason at all.'"  *Id.* at 1329, quoting *Adams v. George W.*

---

2      As both parties agreed at the hearing held on May 12, 2011, the complaint refers to both the employee handbook and the acknowledgement form that plaintiff signed, so the Court may refer to those documents in assessing defendants' Rule 12(b)(6) motion to dismiss.  *See* Defs.' Mot. to Dismiss, Exs. A and B.

*Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).  But there is a public policy exception to this general rule.  In *Adams*, the D.C. Court of Appeals held that an at-will employee stated a cause of action for wrongful discharge where the employee would have been forced to violate the law in order to avoid being terminated.  597 A.2d at 34.  The court described it as a "very narrow exception to the at-will doctrine" limited to "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."  *Id.*  The court also held that this cause of action is an intentional tort.  *Id.*

The D.C. Court of Appeals expanded this public policy exception in *Carl v. Children's Hospital*, 702 A.2d 159 (D.C. 1997).  In *Carl*, the D.C. Court of Appeals held that the public policy exception was not limited to instances where an at-will employee was discharged for an outright refusal to violate the law.  The court concluded that "the 'very narrow exception' created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition."  *Id.* at 160.  The exception may exist where the employee acted in furtherance of a public policy "solidly based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct."  702 A.2d at 163 (Terry, J., concurring).[3]

The plaintiff in *Carl* claimed she was wrongfully discharged because she advocated for patients' rights and against her employer's interests before the Council of the District of Columbia and as an expert witness in court.  The D.C. Court of Appeals read a provision of the D.C. Code that prohibits anyone from threatening any witness from testifying before the Council

---

3      "Relying on *Carl v. Children's Hospital*, courts have treated Judge Terry's concurring opinion as the relevant standard."  *Vreven v. American Ass'n of Retired Persons*, 604 F. Supp. 2d 9, 14 n.5 (D.D.C. 2009) (internal citations omitted).

"as a declaration of policy by the Council seeking to ensure the availability of information essential to its legislative function by imposing criminal penalties on anyone who seeks to impede Council access to such information." *Id.* at 165. The court concluded that there was an adequately "close fit" between that public policy and the plaintiff's termination because termination of employment is "the most severe and most effective" way for an employer to affect an employee's testimony before the Council. *Id.*

Plaintiff's complaint raises the question of whether reporting wrongdoing in connection with government contracting falls within the public policy exception to an at-will employment relationship. 5 U.S.C. § 2302 reflects a clear public policy of encouraging government employees to come forward and report possible problems in federal programs, and there are many other whistleblower protection statutes that protect not only government employees, but private sector employees as well. *See, e.g.*, 15 U.S.C. § 2087 (Consumer Product Safety Improvement Act); 18 U.S.C. § 1514A (Sarbanes-Oxley Act); 29 U.S.C. § 660 (Occupational Safety & Health Act).

The Federal Acquisition Regulations ("FAR") express a policy that contractors avoid or mitigate organizational conflicts of interests and state that "[e]ach individual contracting situation should be examined on the basis of its particular facts and the nature of the proposed contract." 48 C.F.R. § 9.505. The FAR also prohibits personal conflicts of interest:

> Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none. Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct. The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships. While many Federal laws and regulations place restrictions on the actions of Government personnel, their official conduct must, in addition, be such that they would have no reluctance to make a full public disclosure of their actions.

48 C.F.R. § 3.101-1.  The FAR further prohibit employers from "discharg[ing], demot[ing] or otherwise discriminat[ing] against an employee as a reprisal for disclosing information to . . . an authorized official of an agency . . . relating to a substantial violation of law related to a contract . . . ."  48 C.F.R. § 3.903.

Plaintiff alleges that the close personal relationship between the COR, Bailey, and a government contractor, Lori Strickland, violated federal contracting regulations.  Compl. ¶ 45.  He further alleges that his employers knew that he reported those violations to his supervisors and to the OIG.  *Id.* ¶ 46.  Finally, he alleges that he was fired immediately after the OIG concluded that most of his allegations were substantiated and that Bailey and Lori Strickland were subject to discipline.  *Id.* ¶ 47.  Accepting plaintiff's allegations as true and resolving all inferences in his favor, as the Court must do at this juncture, plaintiff in this case has alleged sufficient facts to state a claim under the *Carl* public policy exception to the general rule against wrongful discharge claims by at-will employees.  *See Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158 (D.D.C. 2008) (finding that plaintiff stated a wrongful discharge claim where she alleged she had knowledge of an illegal billing scheme, her employers were aware of her knowledge, and she was fired because of that knowledge).

Defendants argue that plaintiff "cannot and does not explain how COR Bailey's alleged actions constituted a 'substantial violation of law' under these sections so as to make applicable FAR 3.903."  Defs.' Reply at 3.  But plaintiff is not required to establish here that his employers violated any particular provision of the FAR; the FAR provisions are relevant to this motion because they are illustrative of the strong public policy against conflicts of interest and favoring the protection of whistleblowers.  In *Vreven*, the plaintiff had reported concerns to her

supervisors that the defendant was evading taxes in violation of the Internal Revenue Code.  604 F. Supp. 2d at 11.  The court held that the plaintiff stated a claim for wrongful discharge under *Twombly* and the *Carl* standard even though she had not specified the manner in which the defendant allegedly violated its tax exempt status.  The court found that the allegations "make plausible the conclusion that defendant discharged plaintiff as a result of her objections to alleged violations of defendant's tax exempt status."  *Id.* at 14.  Here, plaintiff has alleged sufficient facts to make plausible the conclusion that defendants fired him in retaliation for reporting alleged violations of federal contracting regulations.

> ii.  Plaintiff states a claim for wrongful termination against the individual defendants

The individual defendants argue that they cannot be held liable as a matter law for a wrongful termination claim.  Although the D.C. Court of Appeals has not addressed this question directly, a review of its opinions in the employment area suggests that it would not bar claims for wrongful discharge against individual employees if the facts established that the individuals acted improperly or illegally.  Because the Court must draw all reasonable inferences in plaintiff's favor at this stage, it will allow the wrongful termination claim against the individual defendants to proceed.

Defendants cite decisions of other states holding that individual supervisors cannot be held liable for wrongful termination.  Defs.' Mem. at 11.[4]  While it is true that some states prohibit wrongful termination suits against individual supervisors, it is equally true that several

---

4  Defendants also rely on *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 191 F. Supp. 2d 17 (D.D.C. 2002).  But as plaintiff correctly points out, that case is inapplicable because it involved a wrongful termination claim under a specific provision of the False Claims Act.  The court's definition of "employer" – to determine whether liability extended to individual defendants – was "dependent on statutory interpretation."  *Id.* at 22.  Indeed, the court's decision was based on *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969 (D.C. Cir. 2001), which defined the term "'employer' *in the context of* § 3730(h)."  *Siewick*, 191 F. Supp. 2d at 19 (emphasis added).

states allow such claims.  *See Physio GP, Inc. v. Naifeh*, 306 S.W. 3d 886, 892 n.2 (Tex. App. 2010) (Hudson, J., dissenting) (collecting cases on the split of authority).  The states recognizing individual liability reason that individuals are liable for their own torts, even as agents acting on behalf of their employers.  *See, e.g.*, *Jasper v. H. Nizam, Inc.,* 764 N.W.2d 751, 775–76 (Iowa 2009); *Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 110–11 (N.J. 2002); *Harless v. First Nat'l Bank in Fairmont,* 289 S.E.2d 692, 698–99 (W. Va. 1982).  According to that logic, employees can be liable for a wrongful discharge claim just as any other tort.  *See, e.g., Jasper,* 764 N.W.2d at 775–76; *Ballinger,* 800 A.2d at 110–11; *Harless,* 289 S.E.2d at 698–700.  These courts "reason that individual liability promotes deterrence and better decision making because it allows the active wrongdoer to be held directly responsible."  *Physio*, 306 S.W.3d at 888, citing *Borecki v. E. Int'l Mgmt. Corp.*, 694 F. Supp. 47, 59 (D.N.J. 1988); *Jasper,* 764 N.W.2d at 776.

On the other hand, the states that do not allow wrongful termination claims against individual supervisors explain that "the employment relationship is the source of the duty in wrongful discharge torts."  *Physio*, 306 S.W.3d at 888.  That relationship exists only between employer and employee and not between two employees, and only the employer has the power to terminate an employee.  *Id.* (citations omitted).  These courts further reason that individual liability is unnecessary to deter employees "because liable employers will likely take their own measures to deter agents or employees from wrongfully exercising termination authority."  *Id.* at 889.  Indeed, fear of liability could discourage supervisors from terminating employers under legitimate circumstances.  *Id.* (citations omitted).  Finally, these courts express the concern that it can be difficult to determine which individuals should be liable for a decision to terminate.  *Id.* (citations omitted).

The Court finds the reasoning of the states that have allowed claims against individual employees to be more consistent with the law of the District of Columbia.  Although the D.C. Court of Appeals has not directly ruled on this issue in the context of a wrongful discharge action, it has recognized that there may be some circumstances where an individual supervisory employee can be liable for tortious interference with another employee's contractual relations with the employer.

In *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989), the court held that while ordinarily, employees acting within the scope of their employment are sufficiently identified with the employer that they cannot incur individual liability for actions taken on its behalf, *see Press v. Howard University,* 540 A. 2d 733 (D.C. 1988), an individual supervisory employee may be liable for intentional interference with contractual relations when the employee "procures the discharge of the plaintiff for an improper or illegal purpose."  *Sorrells,* 565 A. 2d at 291, citing W. Keeton, Prosser & Keeton on the Law of Torts § 129, at 990 (5th ed. 1984).  In *Sorrells*, it was the fact that the individual defendant was shown to have acted with malice that differentiated the case from the general rule articulated in *Press*, but the opinion does not indicate that a finding of malice is a necessary predicate for individual liability. The court set forth a list factors to consider in deciding whether an actor's conduct in intentionally interfering with a contract is improper, including the actor's motive and the social interests involved.  *Id.* at 290.[5]  According to the D.C. Court of Appeals, when the

---

5       The seven factors described by the court are:

      (a)  The nature of the actor's conduct,
      (b)  the actor's motive,
      (c)  the interests of the other with which the actor's conduct interferes'
      (d)  the interests sought to be advanced by the actor,
      (e)  the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

facts underlying each of those considerations combine to demonstrate wrongdoing by an employee, the employee's "qualified privilege to act properly and justifiably" toward fellow employees and the employer "is vitiated." *Id.* at 291. This holding is in keeping with the reasoning of the courts in other states that allowed wrongful termination claims against individual employees because individuals are liable for their own torts, even as agents acting on behalf of their employers. Therefore, reading *Sorrells* in conjunction with *Carl*, the Court finds that the D.C. Court of Appeals would allow claims against individual supervisors for wrongful discharge if it was shown that their conduct was sufficiently wrongful and violative of an important public policy.

This holding is consistent with the approach that another court in this district took in *Bowie v. Gonzales*, 433 F. Supp. 2d 24, 30–31 (D.D.C. 2006). In *Bowie*, the court did not specifically address whether a wrongful termination claim could proceed against the individual defendants, but it granted summary judgment in favor of those defendants on the grounds that there was no violation of public policy that could support an exception to the at-will doctrine. The *Bowie* court's apparent assumption that individual employees could be liable for wrongful termination under a different set of facts underscores this Court's view that such claims may be brought in certain circumstances.[6]

---

      (f)  the proximity or remoteness of the actor's conduct to the interference, and
      (g)  the relations between the parties.

6    Plaintiff also points to other cases in which plaintiffs named individual supervisors as defendants in wrongful discharge claims. *See, e.g.*, *Ware v. Nicklin Assocs., Inc.* 580 F. Supp. 2d 158 (D.D.C. 2008); *Carl*, 702 A.2d 159. But the opinions in these cases did not address the issue of individual liability for challenged employment actions. In *Ware,* the defendants moved to dismiss on other grounds, and the court addressed the issues raised by the parties. And in *Carl*, while the nurse who was the plaintiff originally sued both the hospital and her supervisor, the opinion of the D.C. Court of Appeals does not clearly indicate which of the six original counts were brought against the individual defendant, 702 A.2d at 160. Indeed, the en banc opinion

Whether Dodge and Boyle could be found to be individually liable under D.C. law – that is, whether this case is more like *Sorrells* than like *Press* – may also turn on the nature of their employment at Alutiiq.  The *Sorrells* opinion observed:

> In *Press* the individual defendants were officers of the university, not just supervisory employees; . . . [a]s officers acting within the scope of their official duties, they served as the alter ego of the university and had the power to bind the university.  In the instant case, however, [the defendant] was not an officer of [the defendant employer].  She did not have the power to fire [the plaintiff]; only an officer . . . could do that.  "'Employer,' in the context of a corporation, is a 'person who is realistically the alter ego of the corporation' and not 'merely a foreman, supervisor or manager.'"

565 A.2d at 290, quoting *Rustin v. District of Columbia,* 491 A.2d 496, 501 (D.C.), *cert. denied*, 474 U.S. 946 (1985).  The Court cannot determine from the face of the complaint alone whether or not it will turn out to be appropriate to view the two individual defendants as the company's alter egos.

For the purposes of the instant motion, accepting the facts as true and drawing all reasonable inferences in plaintiff's favor, the complaint alleges that defendants Dodge and Boyle were the driving force behind plaintiff's termination, and that their action was in retaliation for plaintiff's cooperation with the OIG investigation.  Whether these defendants can ultimately be held liable for wrongful discharge will depend on the facts that are developed on the question of whether their conduct was improper and, to some extent, what their position was at Alutiiq.  At this stage, the Court simply concludes that plaintiff has stated a claim for wrongful termination against them.  Therefore, the Court will deny defendants' motion to dismiss Count I.

---

addresses only the hospital's motion to dismiss the wrongful discharge claim, since all other claims had been voluntarily dismissed prior to the appeal.  *Id.* at 161 n. 6.

### B.  Count II: Breach of Implied Contract

Defendants argue that plaintiff's cause of action for breach of an implied contract should be dismissed because, as an at-will employee who can be terminated at any time, plaintiff cannot reasonably rely on any oral promise about how he would be disciplined.  Because plaintiff has not alleged the existence of a written policy that conflicts with his at-will employment status, plaintiff has not stated a claim upon which relief can be granted.

"Under District of Columbia law, 'employment is presumed to be at will, unless the contract of employment expressly provides otherwise.'" *Liberatore v. Melville Corp.,* 168 F.3d 1326, 1328 n. 3 (D.C. Cir. 1999), quoting *Carl*, 702 A.2d at 162.  "The at-will employment presumption may be rebutted 'by evidence that the parties intended the employment to be for a fixed period, or subject to specific preconditions before termination.'" *Austin v. Howard Univ.*, 267 F. Supp. 2d 22, 25 (D.D.C. 2003), quoting *Nickens v. Labor Agency of Metro. Washington*, 600 A.2d 813, 816 (D.C. 1991). *See also Shankle v. DRG Fin. Corp.,* 729 F. Supp. 122, 124 (D.D.C. 1989) ("The presumption of terminable-at-will employment can be rebutted only by a clear statement of the parties' intention to do so.").  Moreover, "the terms of an employer's personnel or policy manual may be sufficient to raise a jury question as to whether the manual creates contractual rights for the employee . . . [since] contractual rights may arise from language in employee manuals." *Strass v. Kaiser Found. Health Plan of Mid-Atl.,* 744 A.2d 1000, 1013 (D.C. 2000).  But "such implied contractual rights can be disclaimed, and 'the legal effect of such a disclaimer is, in the first instance, a question for the court to decide.'" *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 806 (D.C. 2003), quoting *Strass*, 744 A.2d at 1011.

Here, plaintiff has alleged that he was verbally "instructed" about Alutiiq's policy of progressive discipline, which he was required to apply to his subordinates.  Compl. ¶ 19.  This

policy allegedly included requiring employees to receive verbal and written warnings before being terminated. *Id.* ¶ 54. He further alleges that these policies created an implied contract that plaintiff would not be terminated until certain preconditions are satisfied. *Id.* Alutiiq counters that plaintiff explicitly acknowledged the at-will nature of his employment by signing an acknowledgement form of the employee handbook.[7] Defs.' Mem. at 12. It therefore argues that any oral representations about a progressive discipline policy are contrary to the at-will nature of his employment and cannot be enforced because "the two are mutually exclusive." *Id.* at 13.

The Court finds that plaintiff has failed to state a claim for breach of an implied contract. Plaintiff received an employee handbook and signed an acknowledgement form that clearly describes the at-will nature of his employment at Alutiiq. *See* Mot. to Dismiss, Exs. A, B. It is true that "[n]ot in every case will a contractual disclaimer clause be adequate to relieve an employer of obligations *specified in its regulations*." *Strass*, 744 A.2d at 1013 (emphasis added). But Alutiiq's employee handbook does not specify any obligation by Alutiiq to apply a progressive discipline policy, and plaintiff admits that the employee handbook did not create an implied contract. Pl.'s Opp. at 12. Plaintiff does not allege the existence of a written progressive discipline policy in his complaint; indeed, the only written policy referenced in the complaint – the employee handbook – does *not* include such a policy. Instead, plaintiff merely alleges that he was "instructed" that he was to apply such a policy to the employees under his supervision,

---

[7]    The acknowledgement form states, in pertinent part: "I have entered into my employment relationship with Alutiiq, LLC voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or Alutiiq, LLC can terminate the relationship at will, with or without cause, at any time. No statement or promise by a supervisor, manager, or department head may be interpreted as a change in policy nor will it constitute an employment agreement with me." Mot. to Dismiss, Ex. B (emphasis omitted). The employee handbook itself contains similar language. *See* Mot. to Dismiss, Ex. A at 7 ("Employment with ALUTIIQ, LLC is voluntarily entered into, and the employee is free to resign at will at any time, with or without cause. Similarly, ALUTIIQ, LLC may terminate the employment relationship at will at any time, with or without notice or cause.") (emphasis omitted).

and he suggests in his opposition to the motion that it is "likely" that the policy is memorialized somewhere.  Compl. ¶¶ 19, 53; Pl.'s Opp. at 12.  Given these facts, the Court cannot find that it is plausible that defendants are liable for breach of an implied contract.  Plaintiff has failed to raise more than the sheer possibility of misconduct, and that is insufficient to state a claim upon which relief can be granted.  *Iqbal*, 129 S. Ct. at 1949.  Therefore, the Court will dismiss Count II of plaintiff's complaint without prejudice.

### C.  Count III: Promissory Estoppel

#### i.  Plaintiff states a claim against Alutiiq for promissory estoppel

Defendants also argue that plaintiff's claim for promissory estoppel should be dismissed because he could not have reasonably relied on any assurances that he would be subject to progressive discipline when he was an at-will employee.

To establish a claim for promissory estoppel, plaintiff must show (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to his or her detriment.  *Simard v. Resolution Trust Corp.,* 639 A.2d 540, 552 (D.C. 1994), citing *Choate v. TRW, Inc.,* 14 F.3d 74, 77 (D.C. Cir. 1994).  "The promise must be definite, as reliance on an indefinite promise is not reasonable."  *In re U.S. Office Prods. Co. Secs. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003), citing *Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1040 (D.C. Cir. 1976).  And although a promise "need not be as specific and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely."  *Id.*, citing *Bender v. Design Store Corp.,* 404 A.2d 194, 196 (D.C. 1979).  *See also Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 26 (D.D.C. 2010) ("While reliance on an indefinite promise is unreasonable, the promisor should expect the promisee to rely on a promise which contains definite terms.")  (internal quotations and citations omitted).

Here, plaintiff premises his claim on the violation of two promises: (1) that Alutiiq employees would be subject to a progressive discipline policy whereby employees would not be terminated summarily for minor infractions, Compl. ¶¶ 19, 59, 61; and (2) that he would not be terminated for reporting alleged violations of conflict of interest rules and cooperating with the OIG investigation.  *Id.* ¶ 60.

With respect to the first promise, plaintiff does not allege he was promised that *he* would be subject to progressive discipline.  Plaintiff merely alleges that he was told by Dodge to apply a progressive discipline policy to his subordinates.  Compl. ¶ 19 ("Mr. Dodge also instructed Mr. Myers at this time about Alutiiq's policy of progressive discipline that Mr. Myers was required to employ with his subordinates.").  These allegations cannot support a cause of action for promissory estoppel because there is no allegation of a definite promise made to plaintiff.  Because it is unreasonable to rely on an indefinite promise, *Parnigoni*, 681 F. Supp. 2d at 26, the Court finds that plaintiff has failed to state a claim for promissory estoppel with respect to the progressive discipline policy.

Plaintiff also alleges that defendants explicitly promised that plaintiff would not be subject to adverse employment actions for his cooperation in the OIG investigation.  Compl. ¶ 60 ("Defendants promised Mr. Myers on numerous occasions in person and over the phone that he would not be subject to any adverse employment actions as a result of his cooperation in the investigation.").  He further alleges that Dodge stated that plaintiff "would have to be crazy" to think he would be subject to any action as a result of his cooperation.  *Id.*  The Court finds that in this instance, the complaint does allege the existence of a definite promise upon which plaintiff could reasonably rely.  *See Mahony v. Universal Pediatric Svcs., Inc.*, 753 F. Supp. 2d. 839, 855–56 (S.D. Iowa 2010) (finding that a statement in an employee handbook that the employer

"will not permit any supervisor . . . to engage in any form of retaliation against any employee availing him/herself of the grievance procedures" is "a clear promise not to retaliate against employee who file grievances"); *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 145 (D.D.C. 2008) (holding that the plaintiff stated a claim because the defendant's promise to automatically convert the plaintiff's frequent flyer mileage if he agreed to take no action by a specific date was sufficiently definite for the plaintiff to have reasonably relied upon it).  Furthermore, plaintiff alleges that he relied to his detriment on that promise because he did not seek another job before cooperating with the OIG investigation, and that he has been unable to find a job since then because Alutiiq characterized his termination as "for cause."  Compl. ¶¶ 42, 61.  Therefore, the Court finds that plaintiff has alleged sufficient facts to permit his claim for promissory estoppel against Alutiiq to proceed.

ii.   The individual defendants may be liable for promissory estoppel

Finally, the individual defendants, Boyle and Dodge, argue that they cannot be held liable as a matter of law for plaintiff's promissory estoppel claim.  While the facts may ultimately establish that they are correct as a matter of law, the Court cannot dismiss the complaint on its face on those grounds.

There is no case law directly on point in the District of Columbia as to whether individual employees can be sued for promissory estoppel under these circumstances.  But courts in other states have held that a promissory estoppel claim cannot be brought against agents who were acting on behalf of their principal at the time the promise was made.  In *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 n.6 (D. Md. 2003), the court noted that other courts that have addressed the issue "have held that promissory estoppel claims are not viable against an agent for a disclosed principal."  (internal citations omitted).  *See also Zimmerman v.*

*First Federal Sav. & Loan Assoc.*, 848 F.2d 1047 (10th Cir. 1988) (holding that the individual defendants could not be liable for promissory estoppel because they were agents acting on behalf of a disclosed principal); *Degen v. Am. Ass'n of Oral and Maxillofacial Surgeons,* 1994 WL 13754, *3 (N.D. Ill. 1994) (finding that the plaintiff could not state a promissory estoppel claim against individual defendants because, under Illinois law, "an agent of a disclosed principal will not be held liable for commitments made on behalf of that principal."); *Froelich v. Aspenal, Inc.*, 369 N.W.2d 37, 39 (Minn. Ct. App. 1985) (applying a contractual standard to determine an agent's liability in promissory estoppel and holding that "a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); *Riddle v. Lacey & Jones*, 351 N.W.2d 916, 920 (Mich. Ct. App. 1984) (upholding dismissal of promissory estoppel claim against an agent for the plaintiff's employer because any promise made by the defendant was clearly made on behalf of his principal, the employer).

In the Court's view, the defendants' motion thus raises a serious question as to whether the plaintiff has stated a claim for promissory estoppel against defendants Dodge and Boyle.  The complaint does not specifically allege that the individual defendants were acting in any capacity other than as agents for Alutiiq when they promised plaintiff that he would not be terminated for cooperating with the OIG investigation.  *See* Compl. ¶ 60 ("Mr. Boyle specifically told Mr. Myers that Mr. Myers would 'have to be crazy' to think that he would be subject to any action as a result of his cooperation.").  Furthermore, promissory estoppel itself is a limited doctrine.  *See Fed. Ins. Co. v. Thomas W. Perry, Inc*., 634 F. Supp. 349, 352–53 (D.D.C. 1986) ("Promissory estoppel is recognized in the law of the District of Columbia as a theory allowing recovery in contract when there may have been a failure of proof of certain elements necessary to the

formation of an express contract . . . if a refusal to enforce a promise admittedly made would in the circumstances (usually reliance) result in injustice.").

But as in the case of Count I, the facts that are developed concerning the terms and conditions of the individual supervisors' employment and their relationship to Alutiiq will inform the application of the agency principles that underlie the defendants' motion to dismiss. Resolving all inferences in favor of the plaintiff at this point, the Court will permit the claim to proceed, although it may be subject to a summary judgment motion at a later point in the proceedings.

### Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss in part and denies it in part.  Accordingly, it is ORDERED that defendants' motion to dismiss is denied with respect to Count I of plaintiff's complaint for wrongful termination against all defendants.

It is further ORDERED that Count II of plaintiff's complaint, for breach of an implied contract, is dismissed without prejudice as against all defendants.

And it is further ORDERED that defendants' motion to dismiss Count III, for promissory estoppel, is granted without prejudice to the extent that plaintiff's claims are based upon the alleged promise to utilize progressive discipline, but it is denied as to all defendants with respect to the alleged promise not to terminate plaintiff as a result of his cooperation with the investigation.

AMY BERMAN JACKSON
United States District Judge

DATE: September 12, 2011

21